palities and that is all sec. 1, of the act of May 17, 1894, provides. Section 6, of same act provides that such companies shall be subject to the same regulations now provided for "street railroads", etc.

After a most careful study of those statutes I fail to discover that the act of May 17, 1894, discloses any different kind of street railroad from that described in sec. 3437 et seq., and I find nothing in the act that leads me to the conclusion that the legislature intended to repeal, modify or limit the operation of sec's. 3437 and 3438.

It is claimed that this limitation is found in sec. 4, of the act of May 17, 1894, which provides for a traffic arrangement with existing companies.

I do not agree with counsel; this may in some sense enlarge the rights of a road built wholly without a municipal corporation, but it would not prevent a road under a proper charter from building into the city.

If plaintiff's contention be true, then if there existed no street railroad in the city, the company would have to set down at the corporation line and wait till some good Samaritan came along with a road.

I am of the opinion that under secs. 3437 & 3438, a charter may be granted to a street railroad company to build its road within and without a city, and I find that the charter under which the defendant is constructing its road authorizes it to build its road within the city of Hamilton under the grant made it by the city July 23, 1897.

Having reached the conclusions indicated in this opinion, the temporary restraining injunction will be dissolved and the petition of the plaintiff dismissed at its cost.

Ed. H. Jones, City Solicitor and Millikin, Shots & Millikin, for Plaintiff.

W. S. Giffin and Dick Sheppard, for Defendant.

---

(Superior Court of Cincinnati.)
Special Term, September, 1898.

## GUSTAVE SAUER v. BENJAMIN H. COX et al.

1. In a suit to marshal liens and determine priorities, a decree for the sale of the property once entered protects and binds all parties to the case. Such decree not having been vacated or set aside, it is irregular to enter a second decree for sale on the petition and claim of another lienholder.

2. An appraisement and sale under said second order of sale will accordingly be set aside for irregularity in the proceedings on which they are based.

---

DEMPSEY, J.

Plaintiff brought this action against the defendant, Cox, for the enforcement of a mechanic's lien, the marshaling of other liens, determination of priorities and sale of the specific property involved. Among the defendant lienholders was the Excelsior Building Association, which had the mortgage upon the property.

On March, 29, 1897, there was entered, on the answer and cross-petition of said association, a judgment finding its rights and equities as against Cox, and in addition a decree for the sale of the property in controversy. An order of sale to the sheriff was issued on this judgment and decree in February, 1898; the property was appraised at $1,200, and on being offered was not sold for want of bidders, of all of which the sheriff made due return. This judgment and decree for sale of March 29, 1897, has never been vacated or set aside.

On June 3, 1898, there was entered on behalf of the plaintiff herein a judgment finding his rights and equities, as against said Cox, and also a decree for the sale of the property to satisfy his claim. Almost immediately an order of sale to the sheriff issued on this judgment and decree; the property was appraised at $850, and on being offered was bid in by the plaintiff at two-thirds of the appraisement.

The case is now here on a motion of plaintiff to confirm this sale, and on the motion of Cox to set aside the sale and also the $850 appraisement.

Cox's motion, it seems to me, must be granted, and plaintiff's motion denied. The main object of this action was to effect a sale of this property divested of all liens against it; this sale was to be for the benefit of all parties to the action, to convert the property into cash for distribution among the lienholders. When once a sale was ordered in the case, that order, until set aside, was binding upon all the parties to the case. That the order was based upon a judgment and finding in favor of one of the lienholders does not alter the conclusive effect of the order upon all other parties. Formerly it was the rule in chancery not to order a sale at all in this class of cases until the rights and liens of all of the parties had been determined and adjusted (Daniel on Chancery Practice, star page 1264) and our Supreme Court in Dempsey v. Bush, 18 Ohio State, at page 383, has intimated that this is the more regular practice. But it was early settled in the old chancery practice that were from the nature of the case a sale was inevitable, it could be decreed on interlocutory order, leaving the liens and priorities to be adjusted (Daniel on Chancery Practice, star page 1264); and our Supreme Court in R. R. Co. v. Lewton, 20 Ohio State, at page 411, has indorsed that practice.

At whatever page of the case it was ordered, it was predicated on the liens and claims of all of the parties to the case as the necessary solution of the rights of the parties in the property,

whether all of those rights were fully ascertained previous to the decree or merely anticipated and left to be determined after the sale. The sale being decreed, the order was an adjudication of the necessity therefor between all of the parties, and, hence, binding on them. To hold otherwise would be productive of the utmost confusion in a case like this; if each lienholder could have an adjudication of his own lien simply, and decree for sale to satisfy the same, we would have as many decrees of sale in a case as there were lienholders, with the result that, where official appraisement is required, there would be as many different appraisements as the different views of appraising committees would suggest. To follow this contention to its logical conclusion, each lienholder under his decree would be entitled to his own order of sale and a sale thereunder, and in the end, if sales were made under several orders, courts would be confronted with as many purchasers, each clamoring for a confirmation of the sale to him. The very aim and purpose of the equitable action to marshal liens and determine priorities would be defeated, and instead of a speedy and inexpensive method of turning the property into money, the major part of it would be wasted in fruitless orders of sale, appraisements, etc.

But it is contended that the control of the sale and the execution of the order is in the hands of him on whose lien the order predicated, and that all other lienholders are at his whim and mercy.

But this is true only in a superficial sense. Courts of chancery usually entrusted the prosecution of the decree and order to sell to the plaintiff or to him on whose lien the decree was secured; but this was done only on the theory that his own self-interest would prompt him to see to its due enforcement and execution. But the courts did not by this action divest themselves of control of the case and of the execution of all orders therein; and they have not hesitated when he who had charge of the prosecution of the order of sale has been dilatory or too long procrastinating, to relieve him of his charge and entrust the duty to some other party in the case. Daniels on Chancery Practice, star page 1267.

Our courts undoubtedly possess the same power, the order of sale being for the benefit of all parties, if he on whose *precipe* it ought to issue is unreasonably dilatory in setting the wheels in motion; the court on timely application would undoubtedly cause the order to issue in behalf of any other party to the cause.

From these views, it follows that the decree of sale entered March 29, 1897, not having been vacated, was binding on the plaintiff herein, and that the decree entered June 3, 1898, ought not to have been entered, and, consequently, that plaintiff was not entitled to the order of sale issued under the entry of June 3, 1898, and, that all proceedings under that order of sale are irregular.

Hence, the sale herein made to plaintiff, and the $850 appraisement, and so much of the entry of June 3, 1898, as provides for a decree of sale on plaintiff's lien will all be vacated and set aside; and so much of the entry of June 3, 1898, as makes findings and judgments on the claims and liens of plaintiff and of William H. Pence is not disturbed or interfered with.

The court deems it proper to say that in his opinion the two appraisements herein have had a deterring effect on the sale of this property, and that it would be for the benefit of all interested herein that the $1,200 appraisement also should be set aside and a new appraisement ordered. This will be ordered if there are no objections, and on application of any party to this cause the court will order an order of sale to issue at once to the sheriff.

Closs & Luebbert for Plaintiff.
Benj. H. Cox for Defendant.